IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| HORACIO BENÍTEZ-RUIZ, et al.,<br><br>  Plaintiffs<br><br>  v.<br><br>HOSPITAL BUEN PASTOR, et al.,<br><br>  Defendants | CIVIL NO. 03-1330 (JP) |

**OPINION AND ORDER**

Before the Court is Plaintiffs Horacio Benítez-Ruiz and Karim Benítez-Marchand's unopposed motion for default judgment (No. 38), and memorandum of law in support thereof (**No. 40**). On June 16, 2009, the Court held a hearing to assess Plaintiffs' request for default judgment against Defendants Hospital Buen Pastor and Héctor Mercado-Pérez. For the reasons stated herein, Plaintiffs' motion for default judgment is hereby **GRANTED**.

**I.   FACTUAL ALLEGATIONS**

Plaintiffs Horacio Benítez-Ruiz ("Benítez-Ruiz") and Karim Benítez-Marchand ("Benítez-Marchand") are the surviving husband and son, respectively, of decedent Mayra Marchand-Collazo ("Marchand"). Plaintiffs allege that Marchand's death was caused by the acts of medical malpractice and "patient dumping" committed by Defendant Hospital Buen Pastor d/b/a North Side Hospital (the "Hospital"). Plaintiffs assert causes of action under the Emergency Medical

CIVIL NO. 03-1330 (JP)          -2-

Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, and Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 5141-5142, against the Hospital and its owner Héctor Mercado-Pérez.

Plaintiffs allege that on the afternoon of July 27, 2000, Marchand, age fifty-six at the time, started showing signs of a severe infectious illness. Marchand's symptoms included disorientation, hyperventilation, and yellow, jaundiced skin. At 7:23 p.m., an ambulance was called, which arrived promptly and took Marchand to the Defendant Hospital, located less than five minutes from Marchand's home in Arecibo, Puerto Rico.

Plaintiffs further allege that Marchand was examined by a doctor at approximately 8:30 p.m. on the same night. At that time, Plaintiff's symptoms had worsened, and she was suffering from hemorrhages throughout her body. Results of blood and urine tests were received shortly after 9:00 p.m. The results confirmed that an acute infectious process had affected her body and caused a number of dangerous conditions including an abnormally low red blood cell count, and an extremely low blood platelet count of 11,000, by comparison with the normal range of 150,000 to 375,000.

Marchand's blood conditions prevented normal clotting and caused her to lose blood rapidly. Plaintiffs allege that instead of performing an emergency blood transfusion to stabilize her condition, the Defendant Hospital arranged to transfer Marchand to a different

CIVIL NO. 03-1330 (JP)            -3-

hospital in Arecibo, Hospital Doctor Cayetano.  Marchand arrived at Hospital Doctor Cayetano at 11:22 p.m.  Although the receiving hospital immediately proceeded with an emergency blood transfusion, Marchand's condition had developed to an irreversible stage, and she died at 2:09 a.m. on July 28, 2000.

## II.  **LEGAL STANDARD FOR A DEFAULT JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 55(b), a party must apply to the Court for a default judgment in cases where default has been entered against the defendant, but the amount of damages is not a sum certain.  Rule 55(b) further provides that the Court may conduct hearings when, to enter or effectuate judgment, the Court needs to determine the amount of damages.  Fed. R. Civ. P. 55(b)(2)(B).

In the instant case, the Clerk of Court has entered default against Defendants Hospital Buen Pastor and Héctor Mercado-Pérez (No. 35). Because the aforementioned Defendants are in default, this "constitutes an admission of all facts well-pleaded in the complaint." Metropolitan Life Ins. Co. v. Colón Rivera, 204 F. Supp. 2d 273, 274-275 (D.P.R. 2002); see also Banco Bilbao Vizcaya Argentaria v. Family Restaurants, Inc., 285 F.3d 111, 114 (1st Cir. 2002); Franco v. Selective Ins. Co., 184 F.3d 4, 9 n.3 (1st Cir. 1999).  Therefore, the only issue remaining for consideration is the amount of damages. See Quirindongo Pacheco v. Rolón Morales, 953 F.2d 15, 16 (1st Cir. 1992); Charles Alan Wright,

CIVIL NO. 03-1330 (JP)           -4-

Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2688 at 444 (1983) (citing Thomson v. Wooster, 114 U.S. 104, 5 S. Ct. 788, 29 L. Ed. 105 (1985)).  Moreover, "once the entry of a default establishes the fact of damage, the trial judge . . . has considerable latitude in determining the amount of damages."  See Jones v. Winnepesaukee Realty, 990 F.2d 1, 4 (1st Cir. 1993).

### III. FINDINGS OF FACT

#### A. Uncontested Testimony of Witnesses Which is Converted Into A "Finding of Facts"

At the default hearing on June 16, 2009, the Court heard the testimony of Plaintiffs Benítez-Ruiz and Benítez-Marchand. Plaintiff Benítez-Ruiz answered questions from his attorney regarding his marriage with decedent Marchand, the birth and upbringing of their child, and the events leading up to his wife's sudden death. Benítez-Ruiz explained that he met Marchand in Salamanca, Spain, while both were studying law there in 1966.  They were married in 1967, and their son, Karim, was born during the same year.

Benítez-Ruiz discussed his wife's career as an attorney and her role in their family.  He explained that he and his wife focused their efforts in the household on the education and upbringing of their son.  Benítez-Ruiz stated that his wife was a key member of their home, who often took a leadership role in helping their son with his education.  Benítez-Ruiz also discussed some of his particularly fond memories of his wife, including annual family

CIVIL NO. 03-1330 (JP)          -5-

vacations.  The Court admitted into evidence photographs of the family's most recent vacation, in which they visited Denmark and neighboring countries.

    Plaintiffs' attorney asked Benítez-Ruiz to describe the events of the evening of July 27, 2000.  He described finding his wife at home in a severely weakened state, and accompanying her in an ambulance to the Hospital.  After discussing the above-described events at the Defendant Hospital, and the transfer to the second hospital, Benítez-Ruiz shared with the Court the impact that the loss of his wife had on him.  Benítez-Ruiz stated that his wife's death caused him to lose a part of himself.  He testified that the event provoked deep sadness and that it felt extremely sudden.  Since Marchand's death, Benítez-Ruiz testified that he has struggled with the absence of his wife.  He stated that this absence has been very burdensome.  Benítez-Ruiz stated that he experiences feelings of loneliness and sadness, as well as a lack of the emotional support that his wife provided.

    Following the testimony of Plaintiff Benítez-Ruiz, the Court heard testimony from Plaintiff Benítez-Marchand.  The witness stated that he is currently married and works as a physician.  He described his mother as a loyal, sincere, and strong-willed person. Benítez-Marchand testified that he and his mother were very close, and were friends as well as family.  He described how when he was growing up, he and his mother would always share news with each other

CIVIL NO. 03-1330 (JP)        -6-

regarding their victories and challenges in work and at school.  He also stated that when he was considering medical school after graduating from college, his mother took the lead in making it a high priority to support his continued studies.  Plaintiff Benítez-Marchand explained that he has always been extremely grateful to his mother for this decision, as she permitted him to embark on a successful career as a physician.

Plaintiffs' attorney proceeded to ask Benítez-Marchand a series of questions regarding the evening of Marchand's death. Benítez-Marchand stated that he could not believe that his mother had suddenly fallen ill, particularly since he had recently spent time with her and found her to be in good health and in good spirits. Benítez-Marchand stated that when he saw his mother at the Hospital, he saw that she was extremely pale.  He recognized that the machine indicating her cardiac rhythm showed a pace of extremely low to nonexistent.  At that point, he knew that his mother was beyond the possibility of recovery.

Benítez-Marchand testified that after his mother's death, he realized that things had changed forever in his family.  Although he is now a father of his own children, Benítez-Marchand's original family unit with his parents is now reduced to just himself and his father.  After the death, Benítez-Marchand and his father arranged for the body to be cremated pursuant to decedent Marchand's wishes. Today, the unexpected loss of his mother still weighs heavily on

CIVIL NO. 03-1330 (JP)          -7-

Benítez-Marchand.  He testified that he incorporates the memory of his mother into his daily life by talking to his daughters about her.

The Court enters the statements made by the witnesses herein and previously recited as the findings of fact herein. Pursuant thereto, the Court enters Judgment as follows: (a) find the Defendants responsible for medical malpractice and therefore responsible for the damages suffered by the Plaintiffs, and (b) therefore the Court enters Judgment for the Plaintiffs and awards them damages payable by the Defendants jointly and severally as follows.

In light of the profound emotional pain endured by Plaintiffs Benítez-Ruiz and Benítez-Marchand, the Court finds that both Plaintiffs have suffered significant damages.  In addition, the decedent herself, Marchand, suffered severely during the brief period of time between the start of her illness and her subsequent death. As stated by Plaintiff Benítez-Marchand in his testimony, no dollar figure will precisely compensate Plaintiffs for their loss. Nevertheless, fulfilling its obligation to assess the appropriate damages amount, the Court shall award the following recovery against Defendants Hospital Buen Pastor and Héctor Mercado-Pérez: **$60,000.00** in damages for Plaintiff Horacio Benítez-Ruiz; **$60,000.00** in damages for Plaintiff Karim Benítez-Marchand; **$30,000.00** in inherited damages for the pain and suffering of decedent Mayra Marchand-Collazo, for

CIVIL NO. 03-1330 (JP)          -8-

the Plaintiffs in equal parts; and attorney's fees of **$20,000.00** for the Plaintiffs in equal parts.

**IV.  CONCLUSION**

In conclusion, the Court **GRANTS** Plaintiffs' motion for default judgment and enters Judgment accordingly.  A separate Judgment shall be entered accordingly.

**IT IS SO ORDERED**.

In San Juan, Puerto Rico, this 10th day of July, 2009.

                                            s/Jaime Pieras, Jr.
                                              JAIME PIERAS, JR.
                                    U.S. SENIOR DISTRICT JUDGE